## SAVERANCE v. LOCKHART.

SPECIFIC PERFORMANCE—LACHES.—Under facts here, plaintiff is entitled to specific performance according to his offer. Vendor should be ready to deliver good title upon compliance with contract by vendee, and it is neither unreasonable nor laches for vendee to refuse to comply until encumbrances are removed.

Before KLUGH, J., Florence, September, 1899. Reversed.

Action by R. C. Saverance against W. J. Lockhart. Plaintiff appeals.

*Messrs. Wilcox & Wilcox,* for appellant, cite: *Vendor must prepare and tender good conveyance:* 6 Rich. Eq., 324. *As to rights of vendee:* 11 Rich. Eq., 225; 5 Rich. Eq., 370; 9 S. C., 265; 6 Rich. Eq., 284; 53 S. C., 572; 1 DeS., 250. *As to delay:* 2 Hill Ch., 121.

*Mr. W. F. Clayton,* contra, cites: *Plaintiff has never unconditionally offered to comply, and is guilty of laches:* 53 S. C., 563.

April 3, 1899. The opinion of the Court was delivered by

MR. JUSTICE JONES. This appeal is from a decree of the Circuit Court dismissing the complaint, which sought specific performance of a contract for the sale of a lot of land in Timmonsville, Florence County. The decree gave no reason for the dismissal beyond stating that the plaintiff failed to establish his right to the relief sought. The exceptions

go to the whole case, and will not be noticed in detail. The action was commenced in 1898. The contract in writing was as follows: "Received of R. C. Saverance $52, in part payment of a lot of land sold to him in the town of Timmonsville (describing it). I, W. J. Lockhart, to make title to said R. C. Saverance soon as balance of purchase money due on said sale, $125, is paid by note payable in fall of 1895. Dated March 6th, 1895. (Signed) W. J. Lockhart." The $52 payment was made by crediting an account for that sum due Saverance by Lockhart. It was not dissented that at the time of the contract, Lockhart was in possession of the premises and claimed to be the owner in fee. The only witnesses examined were the plaintiff and Duncan McKenzie. The plaintiff testified substantially that on the 9th of March, 1895, he offered to sign the note, and leave it with Mr. McSween until he could investigate the title to the property; that Lockhart said no, just leave the whole matter alone. That he (Saverance) went to Darlington and found judgments against Lockhart, and that he only owned two-thirds interest in one of the lots constituting the premises in question. That a second time plaintiff went to defendant and asked for the deed, and defendant said, "as soon as he could get this matter straight, he would go and see Mr. Rose." That about a year and a half before the commencement of the action, plaintiff stated that the judgment was straight, and demanded a deed, when defendant said he never sold a foot of land to plaintiff. That on five or six different times plaintiff offered to comply with his agreement and that defendant refused to comply. Plaintiff denied that he had ever "backed square out" of the trade, as alleged in defendant's answer.

The testimony of Duncan McKenzie, the only other witness, we give entire as follows: Duncan McKenzie, sworn: Q. Mr. McKenzie, what was your business in Timmonsville? A. At that time bookkeeper in McSween's office. Q. Do you know anything about this transaction between Mr. Lockhart and Mr. Saverance? A. Mr. Lockhart and

Mr. Saverance came over here to my office, and Mr. Lockhart said that he had sold Mr. Saverance a lot, and asked me to write the deed. I wrote the deed for them, and before it was signed, Mr. Saverance remarked that he had not investigated the title, and preferred not making the note until it had been done, suggesting that the note be made and also the deed, and left there until he could go to Darlington; and Mr. Lockhart remarked that better let the whole matter stand until Mr. Saverance returned from Darlington; and that is the way the matter stood when both left the office. They both repeated to me the terms of the contract, part payment, and a note signed and given by Saverance to McSween for $125. Q. Did you talk any further with Mr. Lockhart about the transaction? A. No, sir. Q. Did you talk to Mr. Saverance about it? A. Yes, sir. Q. What did he say? A. Mr. Saverance said that Mr. Lockhart could not give a good title, and that was why the trade was not consummated. About one and a half years ago I bought a piece of property from Mr. Lockhart in Timmonsville, and these judgments were then satisfied. Mr. Saverance then said that he called on Mr. Lockhart to complete this title. Then he said Mr. Lockhart repudiated the sale. Q. That was after the fall of 1895? A. Yes, sir. Q. Is it not a fact that the property has gone up considerably in Timmonsville since 1895? A. Yes, sir. Q. Has Mr. Saverance ever given a note of $125 to John McSween in settlement of that judgment? A. No, sir.

This testimony is not impeached at all, and shows that the plaintiff has made repeated offers to comply with his agreement, and that his failure to comply is due to the defendant. A Court of Equity will not permit a vendor to violate his obligation because of a failure of the vendee to pay the purchase price, when the vendor himself caused such failure. Specific performance will be decreed in behalf of a vendee, when he shows his willingness and offers to comply, and that his failure to comply was due to no laches on his part, when nothing appears to show that performance by the ven-

dor is impossible or inequitable.    It was the vendee's duty to be prepared to give the vendee an unencumbered title in fee, and it was not unreasonable for the vendee to postpone unconditional delivery of the note until the vendor was prepared to carry out his obligations.    No laches can be impeached to plaintiff under the evidence in this case, and nothing appears to make specific performance inequitable. On the trial, plaintiff withdrew his demand for the title, with value of defect in title, if any, deducted from the balance of purchase price due, and offered to take as full performance a quit claim deed.    Under all these circumstances, plaintiff was entitled to a decree for specific performance, at least, in accordance with his offer at the trial.

The judgment of the Circuit Court is reversed and the case remanded, with the judgment of this Court that defendant specifically perform his contract by executing to plaintiff a quit claim deed of the said premises, upon the payment by plaintiff to defendant of the sum of $125, and for any proceedings proper or necessary to enforce this judgment.